## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**LAURA J. RAMOS**                                )
**8113 Carlyle Place**                            )
**Alexandria, VA 22308**                          )
        **Plaintiff,**          )
               )
**v.**                                            )      **Civil Action No. 1:13-cv-00328**
               )
**ERIC H. HOLDER, Jr., in His Official Capacity** )
**as United States Attorney General,**            )
**950 Pennsylvania Avenue, NW**                   )
**Washington, DC 20530-0001.**                    )
               )
        **Defendant.**          )
_____)

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1. This is a civil action for monetary damages and equitable relief against the Federal

   Bureau of Investigation ("FBI" or "the Bureau") pursuant to Title VII of the Civil Rights

   Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, for injuries sustained by Plaintiff

   Laura J. Ramos as a result of acts of employment discrimination and retaliation

   perpetrated by Defendant.  Plaintiff contends that management at the Bureau

   discriminated against her because of her race (Hispanic) and then retaliated against her

   because she filed a formal administrative complaint regarding such discrimination, which

   is a protected activity.

**Jurisdiction**

2.  This Court has jurisdiction over the subject matter of this civil action pursuant to 28

    U.S.C. § 1331 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c).

**Venue**

3.  Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e) because the

    Defendant's headquarters is within the geographical boundaries of the District of

    Columbia and because the primary actions complained of either occurred within or were

    directed within the geographical boundaries of the District of Columbia.

**Parties**

4.  Plaintiff Laura J. Ramos is a Hispanic female currently domiciled in Alexandria,

    Virginia, who is employed on a full-time basis as an employee of the FBI, an agency

    under the United States Department of Justice ("DOJ").  At all times relevant to this

    lawsuit, Plaintiff was assigned to work in FBI Headquarters in the District of Columbia.

5.  Defendant Eric H. Holder, Jr., is the Attorney General of the United States and, as such,

    is named as a Defendant only in his official capacity as Attorney General. Mr. Holder is

    the senior Executive Branch federal official responsible for the actions of the United

    States Department of Justice and its subordinate agency, the FBI.  The Department of

    Justice has its principal headquarters located at 950 Pennsylvania Avenue, NW,

    Washington, DC 20530.

**Exhaustion of Administrative Remedies**

6.  Plaintiff's claims are based upon unlawful racial discrimination, hostile work

    environment, and unlawful retaliation for protected equal employment opportunity

    ("EEO") activity.  Plaintiff Ramos is employed by the FBI as a Supervisory Special

Agent ("SSA"), and currently is assigned to Unit 1D of the Counterintelligence Division, located at FBI Headquarters.

7.  On May 12, 2011, Plaintiff Ramos contacted an FBI EEO counselor with respect to claims of unlawful racial discrimination by her supervisor.  On August 31, 2011, Plaintiff Ramos filed a formal EEO complaint, specifically alleging unlawful discrimination. Plaintiff raised additional issues of ongoing discrimination and maintenance of a hostile work environment based upon race in the course of her EEO counseling.  The Complaint was docketed as Agency Case No. FBI-2011-00204, EEOC Case No. EEOC No. 570-2012-00782X.

8.  On September 28, 2011, Plaintiff Ramos contacted an FBI EEO counselor to assert a claim for retaliation by the FBI as a result of her decision to file her original complaint. On December 9, 2011, Plaintiff amended her complaint to include an additional allegation of retaliation.  On December 21, 2011, the Bureau amended Plaintiff's original complaint to include her claim for retaliation.

9.  The Bureau subsequently conducted an EEO investigation, completed a Report of Investigation ("ROI"), and provided the ROI to Plaintiff.  The matter was then assigned to EEOC Administrative Judge Nancy E. Graham, in New Orleans, Louisiana.  As of the date of the filing of this complaint, over 180 days have passed from the date Plaintiff Ramos filed both her original administrative complaint and her amended administrative complaint.  In that time, no appeal has been filed nor has final action been taken. Pursuant to 29 C.F.R. § 1614.407, Plaintiff Ramos may properly file this Complaint in federal district court.  *See Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 350 (D.C. Cir. 1997).

3

**Factual Allegations**

10. Plaintiff began her employment with the FBI in 2003.  In January 2010, she was assigned
    to her current position as an SSA in Unit 1D of the FBI's Counterintelligence Division.

11. In or around March 2011, another SSA, Diana Race, was assigned to the position of
    Acting Unit Chief in Unit 1D and became Plaintiff's supervisor.

12. On April 9, 2011, Plaintiff's grandmother died.  Plaintiff subsequently advised Diana
    Race and other supervisors that her grandmother had passed away and that Plaintiff was
    making arrangements to return her grandmother to her home country of Puerto Rico for
    burial.

13. Beginning in April 2011, after learning that Plaintiff was Hispanic, Race began a pattern
    or practice of harassing Plaintiff and treating her differently from Race's other
    subordinates who were not Hispanic.  For example:

    a.  Race behaved in a manner that was openly hostile to Plaintiff; for example, she
        screamed at Plaintiff and/or made disparaging remarks to Plaintiff on multiple
        occasions in the workplace, without provocation.

    b.  Race repeatedly discussed Ramos's personal situation with other FBI employees
        and made disparaging comments about Plaintiff.

    c.  Race made disparaging and discriminatory comments about Hispanics generally
        and about certain Puerto Rican traditions followed by Ramos specifically, in the
        presence of Ramos and/or Race's other subordinates.

    d.  Race denied various leave requests submitted by Plaintiff, including but not
        limited to requests for medical leave, even though Plaintiff was entitled to the
        requested leave pursuant to FBI policy and there was no legitimate reason for

    denying her requests.  Upon information and belief, Race did not deny such

    requests when they were submitted by non-Hispanic subordinates.

   e.  During periods when Plaintiff was on leave to which she was entitled pursuant to

    FBI policy, SSA Race constantly harassed Plaintiff about returning to work and

    imposed demands on Plaintiff that she did not impose on non-Hispanic

    subordinates.

14. As a result of the foregoing discriminatory conduct, Plaintiff suffered injury to her professional standing and character reputation, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and loss of health.

15. Starting in May 2011, and continuing throughout the summer of 2011, Ramos repeatedly requested that Edward Finnegan, the Assistant Section Chief of the Eurasian Section of the FBI's Counterintelligence Division, and Douglas Lindquist, the Section Chief of the Eurasian Section of the FBI's Counterintelligence Division, transfer her out of Unit 1D because she was being subjected to disparate treatment and a hostile work environment at the hands of her supervisor, Diana Race.

16. On August 31, 2011, Ramos filed a formal complaint for discrimination with the FBI's EEO office.  That same day, without knowing that Ramos had filed her formal EEO complaint, Finnegan offered Ramos a transfer to Unit 1B.

17. After Ramos' supervisors, including Finnegan, learned that she had filed a formal EEO complaint, they began a pattern or practice of systematically retaliating against her.  For example:

   a.  On September 9, 2011, Ramos accepted Finnegan's offer to transfer to Unit 1B.

    Later that same day, Finnegan rescinded his transfer offer.  Finnegan explicitly

told Ramos that he would not transfer her because she had filed a formal EEO complaint.  In other words, Finnegan explicitly based his decision to rescind Plaintiff's transfer on her decision to engage in protected activity.  As a result of Finnegan' decision to rescind Plaintiff's transfer, Plaintiff was forced to continue to work in a hostile work environment in Unit 1D.

b.  On November 10, 2011, Ramos received a Performance Appraisal Report ("PAR"), which is the form that the FBI uses to evaluate employee work performance.  In this PAR, Plaintiff received lower ratings than she had received on her most recent mid-year evaluation, even though there was no legitimate justification for the reduction in her PAR ratings.  Plaintiff's supervisors had no legitimate reason to lower her performance evaluations, and evidently did so in retaliation for filing an EEO complaint.

c.  Since Plaintiff filed her EEO complaint in August 2011, she has applied for over twenty positions within the FBI but outside her unit.  Plaintiff has not been assigned to any of those positions even though she was qualified for each such position.  Indeed, Plaintiff is particularly well-qualified for at least one such position and, pursuant to FBI policy and practice, should have been the leading candidate for that position.  Nevertheless, upon information and belief, Plaintiff was not even seriously considered for the position due to the fact that she filed an EEO complaint.

d.  Since Plaintiff filed her EEO complaint in August 2011, she has been subjected to a hostile and isolating environment at work.  Plaintiff's coworkers have told her that they have been made aware of her EEO complaint and that other employees

discuss it amongst themselves.  Upon information and belief, Plaintiff's

supervisors have discussed her EEO complaint with her coworkers in a successful

effort to disparage her and subject her to such a hostile and isolating environment.

Indeed, one of Plaintiff's coworkers has advised Plaintiff that she is now hesitant

to report improprieties to FBI management because she has seen and heard about

management's efforts to disparage and otherwise retaliate against complainants.

e.   The FBI has also engaged in a systematic effort to retaliate against Plaintiff by

providing her personal information, including but not limited to details about her

claims in this matter, to her coworkers for no legitimate purpose.  By way of

example, on or about February 6 and 8, 2013, the FBI's Office of General

Counsel issued a litigation hold memorandum to an unknown number of FBI

employees that included a laundry list of unnecessary sensitive and detailed

information about Ramos and her claims.  Among other details, the litigation hold

memorandum revealed Ramos's exact ratings in her past performance

evaluations.  Although there is nothing improper about issuing a litigation hold

memorandum when appropriate, the FBI's decision to include such personal

details about Plaintiff in this memorandum served no legitimate purpose.  On the

other hand, it did serve the purpose of subjecting Plaintiff to embarrassment and

disparagement in the workplace.

18. The foregoing actions, and others, taken by the FBI in retaliation against Ms. Ramos,

were part of a broader pattern or practice by the Bureau to discourage employees from

engaging in the protected activity of filing EEO complaints when they are subjected to

unlawful behavior by their supervisors, including racial discrimination.

19. As a result of the foregoing retaliatory conduct, Plaintiff has suffered a loss of income because her career advancement has been impeded and she has been forced to take unpaid leave.  In addition, Plaintiff has suffered injury in the form of emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing and character reputation, and loss of health.

## Count I:  Disparate Treatment

20. Paragraphs 1 through 19 are incorporated herein by reference.

21. As detailed herein, Plaintiff, who is Hispanic, was subjected to adverse employment actions by her supervisor at the FBI because of Plaintiff's membership in a protected class.  These actions constitute unlawful discrimination based upon race, committed by the Bureau's agents in a supervisory capacity, in violation of 42 U.S.C. §§ 2000e *et seq.*, for which the Defendant is liable in his official capacity as Attorney General of the United States.

22. Such unlawful discrimination resulted in past and future financial loss to Plaintiff, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, character reputation, and loss of health.

## Count II: Hostile Work Environment

23. Paragraphs 1 through 19 are incorporated herein by reference.

24. The actions detailed herein demonstrate that Plaintiff was subjected to discriminatory intimidation, ridicule, and insult by her supervisors at the FBI because of Plaintiff's membership in a protected class.  This conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working

environment, in violation of 42 U.S.C. §§ 2000e-2 *et seq.*, for which the Defendant is liable in his official capacity as Attorney General of the United States.

25. This hostile work environment resulted in past and future financial loss to Plaintiff, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, character reputation, and loss of health.

### Count III:  Retaliation

26. Paragraphs 1 through 19 are incorporated herein by reference.

27. As detailed herein, Plaintiff was subjected to adverse employment actions by her employer, the FBI, because she filed a formal EEO complaint alleging discrimination by her supervisor.  These actions constitute unlawful, retaliatory conduct against Plaintiff, in violation of 42 U.S.C. §§ 2000e *et seq.*, for which the Defendant is liable in his official capacity as Attorney General of the United States.

28. Such unlawful retaliation has resulted in past and future financial loss to Plaintiff, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, character reputation, and loss of health.

### Prayer for Relief

29. WHEREFORE, Plaintiff Laura J. Ramos respectfully requests that this Court enter judgment against Defendant and grant Plaintiff the following relief:

   a. Compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, character reputation, and loss of health;

   b. Punitive damages;

c.  Payment of all costs associated with bringing this civil action and the administrative charges that preceded it, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e *et seq.*;

d.  Injunctive relief, including but not limited to such relief as is necessary to stop the FBI's ongoing retaliatory conduct against Plaintiff, which is causing and will cause Plaintiff irreparable injury;

e.  Declaratory relief; and

f.  All other relief that the interests of justice may require.

## **Jury Demand**

30. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a jury trial on all issues of fact, including the measure of damages.


Respectfully submitted,


   /s/ Damon C. Elder_____
Damon C. Elder (DC Bar # 991006)
Judith Bernstein-Gaeta (DC Bar # 443161)
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel: (202) 942-5000
Fax:  (202) 942-5999
Email:  Damon.Elder@aporter.com
        Judith.Bernstein-Gaeta@aporter.com


*Attorneys for Plaintiff Laura J. Ramos*