# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ) | | |
| LAURA J. RAMOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-0328 (ABJ) |
| | ) | |
| LORETTA LYNCH, | ) | |
| as U.S. Attorney General,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| ) | | |

## <u>MEMORANDUM OPINION</u>

In her original complaint in this long-running employment discrimination suit, plaintiff Laura J. Ramos alleged that her employer, the Federal Bureau of Investigation ("FBI"), discriminated against her on the basis of her race (Count I), subjected her to a hostile work environment (Count II), and retaliated against her after she filed an administrative complaint (Count III). The Court granted defendant's motion to dismiss Count II, the hostile work environment claim, on March 21, 2014, and it granted defendant's motion for judgment on the pleadings as to Count I, the racial discrimination claim, on July 7, 2015. The parties have been engaged in motions practice related to the remaining retaliation claim for more than a year. Currently pending before the Court is defendant's motion to dismiss Count III under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. Def.'s Mot. for Partial Dismissal or, in the Alternative, for Partial Summ. J.

---

[1]   The Court is aware that the Department of Justice is currently undergoing a transition in leadership. The caption will be amended when the incoming Attorney General is confirmed. *See* Fed. R. Civ. P. 25(d).

[Dkt. # 54] ("Def.'s Mot."); *see also* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 54-2] ("Def.'s Mem.").

For the reasons that follow, the Court will grant defendant's motion in part and deny it in part.  It will grant defendant's motion for summary judgment on plaintiff's claims in paragraphs 16(b) and 17(b)(iv) of the Amended Complaint.  But plaintiff's claims in paragraphs 16(a), 17(a) and 17(b)(i-iii) of the Amended Complaint will proceed to discovery.  The Court's decision is without prejudice to a future motion for summary judgment, once the facts are developed further.

## BACKGROUND

### I.    Procedural History

Plaintiff filed her initial complaint on March 13, 2013.  Compl. [Dkt. # 1].  The original complaint alleged three counts:  disparate treatment, hostile work environment, and retaliation.  *Id*.  On June 20, 2013, defendant moved to dismiss the complaint for failure to state a claim.  Def.'s Mot. to Dismiss [Dkt. # 10].  The Court granted the motion in part, dismissing Count II, the hostile work environment claim, but it denied the motion to dismiss as to Counts I – disparate treatment – and Count III – retaliation.  Min. Entry (Mar. 21, 2014).

On November 10, 2015, the Court granted plaintiff's motion to amend her complaint, over defendant's futility objection, to add claims that she was stripped of her supervisory roles, denied various transfers, and was constructively forced to withdraw from a particular program.  Min. Entry (Nov. 10, 2015).  Plaintiff filed her amended complaint on November 17, 2015.  Am. Compl. [Dkt. # 50].

On February 2, 2016, defendant filed the instant motion – to dismiss the complaint in part, or in the alternative, for summary judgment in part.  Def.'s Mot.; Def.'s Mem.

Plaintiff opposed the motion to dismiss on February 26, 2016, arguing that defendant was attempting to improperly relitigate or seek reconsideration of matters that had been adjudicated as part of the November 2015 ruling.  Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. [Dkt. # 56] ("Pl.'s Mem.") at 1–2.  The Court allowed plaintiff to file a supplement to her opposition in order to comport with Rule 56 and Local Civil Rule 7(h).  Order (Apr. 15, 2016) [Dkt. # 61].  Plaintiff filed a revised memorandum in opposition on October 3, 2016, as well as an opposition to defendant's statement of facts, and affidavits both from herself and her attorney.  *See* Pl.'s Suppl. Mem. of P. & A. in Opp. to Def.'s Mot. [Dkt. # 66] ("Pl.'s Suppl. Mem."); Aff. of Laura Ramos [Dkt. # 66-3] ("Ramos Aff."); Decl. of Maura McGonigle [Dkt. #66-4] ("McGonigle Decl.").  Defendant replied in support of its motion on October 17, 2016, Def.'s Suppl. Reply in Supp. of Def.'s Mot. [Dkt. # 67] ("Def.'s Reply"), and the Court granted plaintiff leave to file a brief surreply.  Pl.'s Surreply in Opp. of Def.'s Mot. [Dkt #69]; Min. Order (Oct. 19, 2016).

## II.    Factual Background

Plaintiff is a Hispanic woman who has worked for the Federal Bureau of Investigation ("FBI") since 2003, and she is currently assigned to the Baltimore Field Office in Baltimore, Maryland.  Am. Compl. ¶ 4.  She alleges that after she reported discrimination on August 31, 2011 to the agency's EEO office, her supervisors began to retaliate against her.  *Id*. ¶¶ 15, 16.  Plaintiff identifies five incidents of retaliation:

- Rescission of Transfer Offer:  Plaintiff alleges that, starting in May 2011, she repeatedly requested to be transferred out of Unit 1D of the Counterintelligence Division.  *Id.* ¶ 14(b).  On August 31, 2011, the same day of her formal complaint to EEO, one of her supervisors, Edward Finnegan, offered to transfer her to Unit 1B.  *Id.* ¶ 15.  But after Finnegan learned about the EEO complaint, he rescinded the transfer offer and "explicitly told [plaintiff] that he would not transfer her because she had filed a formal EEO complaint."  *Id.* ¶ 16(a).

- <u>Lower Performance Evaluation</u>:  Plaintiff claims that "specific critical elements" of her November 10, 2011 Performance Appraisal Report ("PAR") were lower than in her most recent mid-year evaluation.  *Id*. ¶ 16(b).

- <u>Minimized Authority / Supervisory Role</u>:  From mid-February through November 2013, plaintiff contends defendant "systematically decreased [her] job responsibilities," "excluded [her] from email communications and meetings" regarding projects she had been managing, and "stripped [her] of her supervisory role."  *Id*. at 17(a).

- <u>Denial of Lateral Transfer Requests</u>:  Plaintiff alleges that beginning in April 2013, she was denied numerous requests to transfer.  *Id*. ¶ 17(b).   Specifically, her request to transfer to the Internal Operations Division, her request for a Voluntary Rotational Transfer to the New York Field Office, and her request for a Specialty Transfer to the Boston Field Division were all denied.  *Id*.

- <u>Self-Demotion</u>:  Plaintiff claims that she was "constructively forced" to take her current position with the Baltimore Field Office.  *Id*. ¶ 17(b)(iv).  She describes this position as a demotion because she claims to have lost income, supervisory roles, professional reputation, and leadership potential because she withdrew from the Executive Development Service Program so she could transfer.  *Id*.

## A.   STANDARD OF REVIEW

## I.   Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## II.    Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

Plaintiff argues that summary judgment is premature, and she requests discovery pursuant to Federal Rule of Civil Procedure 56(d). Pl.'s Supp. Mem. at 5. A party opposing summary judgment "ha[s] the burden to state with 'sufficient particularity . . . why discovery [is] necessary.'" *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008), quoting *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989). If a party argues that it lacks sufficient information to adequately respond to a motion for summary judgment, the party must come forward with an affidavit or declaration stating with sufficient particularity what additional discovery is sought and why it is necessary. *Convertino v. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012). The information identified must offer a "reasonable basis to suggest that

discovery" will bear out its claims. *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237-38, 335 (D.C. Cir. 1999).

## ANALYSIS

Title VII of the Civil Rights Act of 1964 was enacted to implement "the federal policy of prohibiting wrongful discrimination in the Nation's workplaces." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013). Title VII's anti-retaliation provision makes it unlawful for "an employer [to] 'discriminate against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e-3(a). When a plaintiff brings a retaliation claim based on circumstantial evidence, the Court analyzes the claim under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that familiar framework, a plaintiff must first establish a prima facie case of retaliation. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). If she can do that, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for the employment decision. *Id.*, quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Then, plaintiff must prove by a preponderance of the evidence that the employer's proffered reason is actually a pretext for discrimination. *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

To establish a prima facie case of retaliation, "the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006). In the retaliation context, an adverse action is one that is "harmful to the point that [the employer's action] could well dissuade a reasonable

worker from making or supporting a charge of discrimination."  *Burlington N.*, 548 U.S. at 57, quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).  Unlike in the discrimination context, the "scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *Burlington N.*, 548 U.S. at 67, and therefore, it does not require a materially adverse change in the terms and conditions of employment.  *Steele v. Schafer*, 535 F.3d 689, 695–96 (D.C. Cir. 2008); *see also Bridgeforth v. Jewell*, 721 F.3d 661, 664 n.* (D.C. Cir. 2013) (explaining that retaliation "encompass[es] a broader sweep of actions" than wrongful discrimination.).

But even in the retaliation context, the category of adverse events does not include trivial harms:  "[a]ctionable retaliation claims are limited to those where an employer causes 'material adversity,'" and the plaintiff still must suffer some objectively tangible harm.  *Wiley*, 511 F.3d at 161; *Holcomb*, 433 F.3d at 902.  The standard is an objective one that is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."  *Burlington N.*, 548 U.S. at 69.

Finally, as the D.C. Circuit has explained, once the defendant has put forth a legitimate and nondiscriminatory reason for its action, "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009), quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

I.     **Plaintiff's rescinded transfer claims will move forward.**

A.     **Plaintiff has identified specific facts she intends to develop to support her claims regarding her rescinded transfer offer in 2011.**

Plaintiff alleges that Edward Finnegan, in his capacity as the Assistant Section Chief of the Eurasian Section of the FBI's Counterintelligence Division, "explicitly told [her] that he would not transfer her because she had filed a formal EEO complaint" and that he "rescinded his transfer offer" to transfer plaintiff from Unit 1D to Unit 1B.  Am. Compl. ¶ 16(a).  Defendant moves for summary judgment on this claim by arguing that "[p]laintiff cannot establish that the lateral transfer denial caused her any objectively tangible harm."  Def.'s Mem. at 6.  To establish that the rescission of this transfer offer from Unit 1D to Unit 1B was not an adverse action, defendant submits the declaration of the Section Chief of the Strategic Resources Section of the FBI Counterintelligence Division, Margaret Buckley.  *See* Decl. of Margaret R. Buckley [Dkt. # 31-3] ("Buckley Decl.") ¶ 1.  Buckley avers that the transfer offered to plaintiff would have been a lateral transfer because the units "hold the same grade level, manage similar investigative matters, and have similar job responsibilities."  *Id.* ¶ 6.  She further contends that the transfer would not have provided plaintiff with "additional employment benefits or provide any additional future promotional opportunities."  *Id.* ¶ 7.

Plaintiff counters that additional discovery is necessary to allow her to adequately respond to the defendant's motion.  Pl.'s Supp. Mem. at 9–10.  She has identified specific areas where factual development is needed, including information on the other employees within Unit IB and their compensation.  McGonigle Decl. ¶ 19.  Plaintiff has also suggested that different units may vary in terms of the opportunities they offer for promotion and career advancement.  Ramos Aff. ¶ 23.

While plaintiff's Rule 56(d) showing on this issue is somewhat thin, the Court finds that judgment for defendant on this issue is premature. The information sought by plaintiff could show that there was objective harm caused by the transfer – either direct, financial harm, or harm to plaintiff's prospects for advancement at the agency – and that is a "reasonable basis to suggest that discovery" will bear out her claims. *Carpenter*, 174 F.3d at 237–38.[2] Since even lateral transfer offers with no increase in pay and benefits can be adverse employment actions under some circumstances, *Stewart v. Ashcroft*, 352 F.3d 422, 426–27 (D.C. Cir. 2003), there is a reasonable basis to believe that the opportunity to develop these facts further would aid in plaintiff's ability to illuminate the question of whether or not the rescission of the transfer offer rises to the level of an adverse action.

**B.    Plaintiff has identified specific facts she intends to develop to support her claims regarding her denials of transfer in 2013.**

Plaintiff alleges that the agency unlawfully denied her request for a transfer in 2013 to the Internal Operations Division, her request for a Voluntary Rotational Transfer to the New York Field Office, and her request for a Specialty Transfer to the Boston Field Division. Am. Compl. ¶ 17(b)(i–iii). Defendant moves for summary judgment on these claims, arguing that it had legitimate, non-retaliatory reasons for those adverse actions: that plaintiff was not selected for these positions based on her seniority and performance ratings in 2013, not in retaliation for her EEO complaint. *See* Def.'s Mem. 10–13.

Plaintiff argues that she is "entitled to take additional discovery" to develop proof as to whether the employer's stated reason is pretext for retaliation. Pl.'s Supp. Mem. at 14. First,

---

2    Defendant argues that plaintiff has produced only a self-serving affidavit to show that other field offices are considered fast-tracks to promotions and career advancement, Def.'s Reply at 4, but non-conclusory affidavits, even when they are self-serving, can create genuine issues of fact on summary judgment. *See Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016).

plaintiff requests discovery about the transfers, including the criteria that the hiring officials used in selecting candidates for transfers, and she requests the agency communications related to the candidates who ultimately received the positions.  McGonigle Decl. ¶ 19(d–g).  Second, plaintiff seeks to depose the Unit Chief for the Human Resources Division to develop facts on transfer selection criteria, seniority determinations, and the interplay of FBI policy and common practice in personnel-related decisions.  *Id.* ¶ 20(e).  Third, plaintiff seeks all documents and communications regarding her qualifications.  Ex. B to Pl.'s Mem. [Dkt. # 56-4].  Considering plaintiff's allegation that she was explicitly denied one transfer request because she filed a formal EEO complaint, *see* Am. Compl. ¶ 16(a), there is a reasonable basis to believe that discovery might lead to admissible evidence on the question of whether the agency's proffered reason is worthy of credence.  *Bernanke*, 557 F.3d at 678.

## II. Plaintiff's claims regarding her allegedly lower ratings on elements of her 2011 Performance Appraisal Report and her forced withdrawal from the Executive Development Service Program fail.

### A. Plaintiff's claims concerning her allegedly lower ratings on elements of her 2011 Performance Appraisal Report fail because there is no material adversity.

Plaintiff alleges she "received lower ratings on specific critical elements" of her November 2011 Performance Appraisal Rating ("PAR") in retaliation for filing an EEO complaint. Am. Compl. ¶ 16(b).  She points to the fact that her rating in the "Critical Elements" of "Organizing, Planning, and Coordinating," "Relating with Others and Providing Professional Service," and "Maintaining High Professional Standards" categories dropped from a rating  of "outstanding" in March 2011 to "excellent" in November 2011.  *See* Pl.'s Suppl. Mem. at 9.  But her rating for "Investigating, Decision Making, and Analyzing" increased from "excellent" to "outstanding" between her March and November reports and the other "Critical Elements" remained the same.  *See* Ex. 10 to Def.'s Mot. to Dismiss [Dkt. # 10-10] (March 2011 Six Month Progress Review);

Ex. 8 to Def.'s Mot. to Dismiss [Dkt. # 10-8] (November 2011 PAR).  Indeed, plaintiff's overall

PAR increased from a rating of "successful" in October 2010 to a rating of "excellent" in both the

March 2011 mid-year progress review and her November 2011 year-end evaluation.  *See* Exs. 8–

10 to Def.'s Mot. [Dkt. ## 10-8, 10-9, 10-10].

Defendant moves for summary judgment, arguing that these ratings do not show that

plaintiff was subject to a materially adverse employment action.  Def.'s Mem. at 8.  Plaintiff

counters that "[l]owering a specific element of her PAR in retaliation for filing an EEO complaint

is no less a violation than lowering the topline rating would be," and she requests discovery to

counter defendant's assertions on this issue.  Pl.'s Supp. Mem. at 9–10.  In particular, she also

seeks to depose her former supervisor, John Girgenti, the Unit Chief in Section 1D from 2010 to

mid-2011, concerning the circumstances of the review, McGonigle Decl. ¶ 20(a), and she requests

"[a]ll documents referred to, referenced in, identified in, or reviewed" for the purpose of

completing her Progress Review and Performance Appraisal Report for 2011.  Ex. B to Pl.'s Mem.

But plaintiff fails to articulate why these sources of information would be relevant, and

therefore does not show the information requested is "essential" to defeating defendant's motion

as required by Rule 56(d).  Plaintiff does not explain how the documents or testimony she seeks

will create a genuine issue of material fact: she does not explain how these documents would show

that the lower elements on her PAR would discourage a reasonable worker from making or

supporting a charge of discrimination, *see Burlington N.*, 548 U.S. at 57, and she has not shown

how deposing Girgenti, who was not her supervisor for the November 2011 PAR, would be

relevant to responding to defendant's arguments.  *See* McGonigle Decl. ¶ 20(a).  Therefore,

plaintiff's motion for additional discovery under Rule 56(d) is denied.

Because plaintiff has failed to identify areas for factual development that could have a bearing on her claims in paragraph 16(b) of the Amended Complaint, the Court moves to the merits of defendant's argument:  that plaintiff's lower ratings on specific elements of her PAR do not constitute an adverse action.  *See* Def.'s Mem. at 7–9.  Generally, poor performance evaluations alone are not considered "materially adverse" if they do not affect an employee's "position, grade level salary or promotional opportunities."  *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009), quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008).  "[P]erformance evaluations ordinarily are not actionable under Title VII" because the harm they cause is often speculative. *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009).  However, receiving a poor performance evaluation that increases the likelihood of denial of a bonus or promotion could dissuade a reasonable worker from pursuing charges of discrimination.  *Id.*; *see also Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 217 (D.D.C. 2009) ("If [the plaintiff] can show that her poor performance reviews resulted in her non-selection for promotions . . . then she will have demonstrated that they were adverse employment actions.").

Here, plaintiff has not shown that the lowering of specific elements on her PAR had an impact on her "position, grade level salary or promotional opportunities."  *Taylor*, 571 F.3d at 1321.  Plaintiff's year-end overall rating increased from "successful" in October 2010 to "excellent" in November 2011.  *See* Ex. 8 to Def.'s Mot. to Dismiss; Ex. 9 to Def.'s Mot. to Dismiss.  And while plaintiff maintains that certain elements of her 2011 PAR were lower than her Six Month Progress Review, her overall rating remained the same.  *See* Ex. 10 to Def.'s Mot. to Dismiss.

In addition, defendant has put forth evidence that plaintiff was awarded a within-grade step increase to Grade 14, Step 3 in 2012.  *See* Ex. 1 to Def.'s Mot. [Dkt. # 54-3].  She also received an

"Individual Time-Off Award" in 2012.  *See* Ex. 2 to Def.'s Mot. [Dkt. # 54-3].  So plaintiff has

not shown that her performance reviews cost her financially or led to non-selection for promotions.

Nor has plaintiff showed that her ratings of "excellent" in the three "Critical Elements" constituted

poor or critical performance appraisals that would deter a reasonable employee from filing an EEO

complaint.   So plaintiff has failed to establish that the ratings on her November 2011 PAR

constitute retaliation because she has not shown that those ratings would dissuade a reasonable

employee from filing a charge of discrimination.

> **B.    Plaintiff's constructive demotion claim fails.**

Finally, plaintiff's transfer to the Baltimore Field Office and her withdrawal from the

Executive Development Service Program, Am. Compl. ¶ 17(b)(iv), does not constitute an adverse

employment    action.     It    is    true    that    "'reassignment    with    significantly    different

responsibilities' . . .  generally indicates an adverse action" in the discrimination context.  *Forkkio*

*v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002), quoting *Burlington Indus., Inc. v. Ellerth*, 524

U.S. 742, 761 (1998).  But here, plaintiff herself requested the transfer to the Baltimore field office

and she accepted the position change – including the demotion.  Plaintiff's application for and

acceptance of the transfer and the new position cast doubt on whether this change would qualify

as an adverse employment action, and it certainly undermines her claim that the transfer was

somehow caused by defendant in retaliation for her protected activity.  *See, e.g.*, *Simpson v. Borg-*

*Warner Auto., Inc.*, 196 F.3d 873, 876–78 (7th Cir. 1999) (holding that an employee's voluntary

position downgrade was not an adverse employment action where the employee requested

reassignment, and there was no evidence that her work conditions were so intolerable as to

constitute a constructive demotion).

Plaintiff counters that "[d]iscovery on the constructive demotion claims has not yet begun," Pl.'s Am. Concise Statement of Genuine Issues in Opp. to Def.'s Statement of Material Facts [Dkt. # 66-1] ¶ 36, and she seeks discovery related to the candidates for the position in the Baltimore office.  McGonigle Decl. ¶ 19(g).  But that discovery would not solve the problem – that plaintiff has not identified any discovery she would undertake to support her theory that she was constructively demoted.  Therefore, the Court will grant the defendant's motion on this issue as well.

## CONCLUSION

For those reasons, the Court will grant defendant's motion with respect to the claims in paragraphs 16(b) and 17(b)(iv) of the Amended Complaint, and deny the motion without prejudice as to the claims in paragraphs 16(a), 17(a) and 17(b)(i–iii).  A separate order will issue.

_____
AMY BERMAN JACKSON
United States District Judge

DATE:  January 31, 2017